IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEFANIE D. HUNTER, NATHAN A. LIEDL, and
ESTATE OF JAXON HUNTER,

           Plaintiffs,

v.                                                                                                            OPINION and ORDER

CHIPPEWA COUNTY DEPARTMENT OF HUMAN                       20-cv-61-jdp
SERVICES, TIM EASKER, SERENA SCHULTZ, and
MATTHEW C. ANDERSON,

           Defendants.

---

This tragic case is about Jaxon Hunter, an infant who died from injuries he suffered at a home daycare. The daycare's operator was also the foster parent of A.F., a child who caused Jaxon's fatal injuries. Plaintiffs Stefanie Hunter and Nathan Liedl, Jaxon's parents, contend that defendants, the Chippewa County Department of Human Services and three of its employees, are liable for Jaxon's death because they should have known that it was dangerous to place A.F. in a foster home that also operated a daycare.

A key piece of evidence has recently come to light, and plaintiffs ask the court to amend the scheduling order to allow them to respond to it. Dkt. 51. The newly discovered evidence is a Child and Adolescent Needs and Strengths report on A.F., commonly known as a "CANS" assessment, which is a tool developed by the state Department of Children and Families to help social workers determine the level of services that a foster child requires. *See* Dkt. 34. Before placing A.F., defendants conducted a CANS assessment stating that she "needs to be seen by a mental health professional or should be under the care of a mental health professional." Dkt. 52-8, at 1. Defendant Matthew Anderson, a Chippewa County social

worker, testified in a deposition that A.F. was not psychologically evaluated before being placed in the foster home where Jaxon was injured. Dkt. 50 (Anderson Dep. 49:19–25).

The parties' access to A.F.'s juvenile records has been handled in a related state-court action brought by plaintiffs in the Dunn County circuit court pursuant to *State v. Bellows*, 218 Wis. 2d 614, 582 N.W.2d 53 (Ct. App. 1998). As part of that case, the county gave what it believed was A.F.'s complete file to the circuit court, which directed the release of about 60 pages of records in August 2020. In November, plaintiffs asked defendants to produce A.F.'s CANS assessments, but defendants didn't produce any assessments before plaintiffs' January 2021 expert-witness disclosure deadline. Plaintiffs submitted an expert report from Abigail Rich, a social worker, who criticized defendants for failing to conduct a CANS assessment of A.F. Dkt. 31, at 9.

On February 5, 2021, Chippewa County's corporation counsel informed the Dunn County circuit court that the county had discovered three CANS assessments that had been inadvertently omitted from its earlier document production. Dkt. 52-5. Corporation counsel copied the parties' attorneys on his letter. The circuit court ordered the release of the CANS assessments in early March. But plaintiffs didn't realize that the CANS assessments had been released until early April, when they saw that defendants' retained psychological expert, Anthony Jurek, had referred to the CANS assessments in his report. *See* Dkt. 58-3, at 10. Defendants then provided copies of the CANS assessments to plaintiffs.

Plaintiffs contend that they should be allowed to name a new mental-health expert, or, in the alternative, that they should be allowed to name an expert to rebut Jurek's report and address the CANS assessments. They say that their social-work expert, Rich, should be allowed to supplement her report, in which she criticized defendants for failing to conduct a CANS

assessment. And they say that they should be allowed to re-depose witnesses regarding the CANS assessments, although they do not say precisely whom they wish to re-depose other than Anderson. Defendants don't object to allowing Rich to supplement her report, and they don't object to allowing plaintiffs to re-depose Anderson. (They don't say whether they object to re-deposing other witnesses.) But they object to allowing plaintiffs to name a new expert or a rebuttal expert.

Plaintiffs don't explain why the late disclosure of the CANS assessments warrants allowing them to add a new mental-health expert with unrestricted scope, so the court will not grant that remedy. But the court will allow plaintiffs to respond to the new evidence with a rebuttal report. This case will likely turn on whether defendants could have foreseen that A.F. would pose a threat to the children in the daycare. The statement in the CANS report that A.F. should have been evaluated by a mental health professional, and the lack of such an evaluation, are likely to be key pieces of evidence. Defendants' psychological expert opined in his report about what such an evaluation would have shown, and plaintiffs deserve the chance to respond to those opinions. The court will allow plaintiffs to name an expert to rebut defendants' psychological expert and to address the CANS assessments.

Defendants' main argument against plaintiffs' motion is that plaintiffs haven't shown good cause under Federal Rule of Civil Procedure 16(b)(4) for modifying the scheduling order, under which rebuttal expert reports would be allowed only by stipulation or leave of court, Dkt. 10, at 2. Defendants say that plaintiffs are using the CANS assessments as an excuse to obtain a new expert opinion "to fill what they perceive as gaps in their case . . . after failing to name a qualified expert" to opine on A.F.'s mental health. Dkt. 57, at 10. They say that plaintiffs should have known that A.F.'s mental health would have been at issue based on the

3

complaint, in which they alleged that "A.F.'s condition and history of behavioral, emotional, and anger problems" should have placed defendants on notice of the risk she posed to other children. Dkt. 21, ¶ 23. And defendants say that the CANS assessments aren't the type of information that a mental-health expert would review; rather, such an expert would review A.F.'s case file, the relevant portions of which have been available to plaintiffs for months.

The gist of plaintiffs' complaint is that a reasonable *social worker* should have concluded from A.F.'s file that she might pose a risk to young children. Defendants try to show through Jurek's report that the evaluation recommended in the CANS assessments would not have shown that A.F. posed a foreseeable risk. Jurek opined, for example:

- "[O]utside of her interactions with her family, AF's behaviors did not suggest problems with uncontrolled aggression."

- There was no evidence before Jaxon's death that A.F. had "a broader behavioral or emotional disturbance."

- "[E]ven if AF had been referred for a more comprehensive mental health evaluation [as recommended by the CANS assessment], there is no way that such an assessment could have included an objective assessment of her violence risk."

- A.F.'s actions that injured Jaxon were likely caused by "her fear response," which "overwhelmed her capacity to consider reasonable ways in which she might respond [to] the situation in which she found herself, causing her to act out in a primitive unmodulated way."

- "[T]he defendants [did not] kn[o]w or could have known that AF was likely to cause bodily harm to others when she was placed with [the daycare operator] as a foster child."

Dkt. 58-3, at 16–18. By submitting an opinion that the evaluation recommended by the CANS assessments wouldn't have shown that A.F. posed a foreseeable risk and by offering other opinions about A.F.'s psychological state, defendants have put A.F.'s psychological state directly at issue in a way that plaintiffs' complaint does not. Now that the CANS reports are

4

in evidence, it's fair to allow plaintiffs to retain an expert to rebut this opinion and to address what the recommended psychological evaluation would have shown.

Defendants' other arguments don't require extended discussion. Defendants say that if plaintiffs had been more diligent in monitoring the progress of the *Bellows* action in the circuit court, they could have received the CANS assessments a month earlier. But that wouldn't have changed much; plaintiffs still wouldn't have received the reports until after their own expert reports were due. Defendants also say that plaintiffs rebuffed their offer in late February 2021 to address any scheduling issues created by the late disclosure of the CANS assessments. But at that point, plaintiffs had no idea what was in the assessments, nor did they know that defendants' psychological expert would be opining on them, so it wasn't clear whether plaintiffs would need to supplement their expert's report or seek leave to file a rebuttal report. Finally, defendants say that plaintiffs wouldn't be prejudiced if their motion is denied because defendants will allow plaintiffs' expert to address the CANS assessments in a supplement to her report and allow plaintiffs to re-depose Anderson. But as noted above, defendants' expert has opined that a psychological evaluation of A.F. wouldn't have shown any foreseeable risk of violence. Plaintiffs are entitled to address this point, and they'll need a psychological expert to do so.

The court will grant plaintiffs' motion in part. Plaintiffs may retain a psychological expert to address the CANS assessments and to rebut Jurek's report. Plaintiffs may supplement their social-work expert's report to address the CANS assessments. And plaintiffs may re-depose any witnesses who would have relevant testimony regarding the CANS assessments. Although plaintiffs don't specify which witnesses they wish to re-depose other than Anderson,

defendants should allow plaintiffs to re-depose any witnesses whose testimony would be relevant.

Two issues remain. First, defendants have filed a motion for summary judgment. Dkt. 33. Defendants don't address the CANS assessments or A.F.'s psychological state in their motion, nor do they rely on Jurek's expert report. But they may wish to address these issues after plaintiffs file their rebuttal and supplemental reports. So the court will deny defendants' motion without prejudice. Magistrate Judge Stephen Crocker will hold a scheduling conference to set a new deadline for dispositive motions and reset the remainder of the schedule.

Second, plaintiffs ask the court to sanction defendants by awarding fees and costs. But the court isn't persuaded that sanctions are warranted. Plaintiffs didn't file a motion to compel defendants to produce the CANS assessments, so sanctions aren't available under Rule 37. The court has the inherent authority to sanction a party that has "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012)). But nothing suggests that defendants' late production of the CANS assessments was anything other than a mistake. Any prejudice to plaintiffs is redressed by this order; the court will deny plaintiffs' request for sanctions.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to amend the scheduling order, Dkt. 51, is GRANTED in part. As stated in this order, plaintiffs may name a rebuttal expert and may supplement the expert report of Abigail Rich. The remainder of plaintiffs' motion is DENIED.

2. Defendants' motion for summary judgment, Dkt. 33, is DENIED without prejudice. Magistrate Judge Stephen Crocker will hold a scheduling conference to set a new dispositive-motions deadline and reset the remainder of the schedule.

Entered April 30, 2021.

                                BY THE COURT:

                                /s/

                                _____
                                JAMES D. PETERSON
                                District Judge